IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | 8:05CR119 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| JOSE L. CORRALES-WYANT, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant Jose L. Corrales-Wyant's objection, Filing No. 22, to the report and recommendation ("R&R") of the United States Magistrate Judge ("Magistrate"), Filing No. 21, regarding defendant's motion to suppress, Filing No. 13. Defendant is charged with one count of possessing a stolen firearm in violation of 18 U.S.C. § 922(j). Filing No. 1. The defendant filed a motion to suppress evidence and statements, and the magistrate recommended that the defendant's motion be granted. The government objects to the recommendations of the magistrate.

Pursuant to 28 U.S.C. § 636(b)(1), the court has conducted a de novo determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the entire record including the transcript of the hearing held on August 15, 2005, Filing No. 20 ("Tr."), and the relevant case law. The court concludes that the magistrate's report and recommendation should be adopted.

## BACKGROUND

At approximately 9:00 p.m., in February 2005, Omaha Police Officers David Bruck and Devin L. Crinklaw patrolled what they considered to be a high crime area near 20th and

W Streets in South Omaha. Officer Crinklaw testified that Officer Bruck observed three people walking who he believed needed to be checked and stopped. Tr. 26:7-12; Tr. 31:3-13; 22:13-19. Officer Crinklaw further testified that they traveled in an unmarked cruiser; however, Officer Bruck testified that they traveled in a marked patrol cruiser. Officer Crinklaw testified that he immediately became concerned for officer safety. He testified that "The reason we conducted a Terry stop - or a Terry frisk - was dark conditions outside of a house that had been shot up several times." Tr. 11:20-23. The stop occurred in front of a house known to have gang members as residents who Officer Crinklaw believed to be anti-police. Tr. 13:10-11.

Officer Bruck testified that he had officer safety concerns, he did not know what "they were planning," and "until we get up and talk to them, we don't know what they are doing." Tr. 38:17-19. He testified that the location caused him great concern as he knew it to be a haven for gangs and an area of high crimes. *Id.*; Tr. 35:1-6; 37:1-7: Officer Bruck knew that the house had connections to the Lomoss gang and the SOC gang and that there had been shootings at that house in recent months. Tr. 37:8:23. He testified that he and Officer Crinklaw traveled in a marked cruiser and dressed in winter police uniform with badges and patches. Tr. 35:13-36:8; 38:2-11. He further testified that the defendant faded behind the other two individuals, and that he made this observation while he was still in his cruiser. Tr. 36:14-18. According to Officer Bruck, prior to the officers exiting the vehicle, the front two individuals put their hands in their front pockets. Tr. 39:25-40:6. This caused him concern for officer safety. Tr. 38:14-19. Officer Bruck agrees that as the officers exited the police cruiser, they told the three individuals to show their hands. Tr. 39:20-24.

The officers exited their cruiser, and Officer Bruck recognized the person hiding behind the other two individuals as a gang member named Corrales who had previously resided at this gang house and with whom Officer Bruck personally had five previous contacts. The individuals removed their hands from their pockets when requested to do so by the officers. During a subsequent pat-down for officer safety, Officer Crinklaw found a Raven Arms MP-25 semiautomatic pistol firearm in the defendant's left front coat pocket. The officers determined that the pistol had been stolen in November of 1994.

## DISCUSSION

Police officers are free to ask a citizen on the street if that person is willing to answer questions. *Florida v. Bostick,* 501 U.S. 429, 434 (1991)*; United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000). In addition, a protective frisk is permissible if based upon a reasonable suspicion that criminal activity is afoot and that the individual might be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). "[I]t is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22. The Constitution prohibits only unreasonable searches and seizures. *Id.* at 9. "When determining whether a police officer had reasonable suspicion of criminal activity, we must view the totality of the circumstances 'as understood by those versed in the field of law enforcement.' *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed.2d 621 (1981)." *United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000). "Reasonable suspicion requires 'a particularized and objective basis for suspecting the person stopped of criminal activity.'"

3

*Thomas v. Dickel*, 213 F.3d 1023, 1024 (8th Cir. 2000) (citations and quotations omitted).

With regard to a suspicious location:

> An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. *Brown v. Texas,* 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a high crime area among the relevant contextual considerations in a *Terry* analysis. *Adams v. Williams,* 407 U.S. 143, 144, 147-148, 92 S. Ct. 1921, 32 L. Ed.2d 612 (1972).

*Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Likewise, evasive behavior has been recognized as evidence which supports a finding of reasonable suspicion. *Id.*

The magistrate determined that reasonable suspicion did not exist to justify the stop by the officers in the first instance. The government objects and, while admitting that this case is "at the low end of the threshold," believes it met its burden of establishing reasonable suspicion. Tr. 54:2-3. The government argues that this a high crime area with recent shootings at this house; that the officers had every right to exit their vehicle and question the defendant and his friends; that the occupants of the house had gang ties; that the other two individuals hid their hands in their jackets which could be an indication that they had weapons in their pockets; and based on these facts, the officers were entitled to pat down the defendant and his friends for officer safety reasons.

The court agrees with the magistrate. There are no specific articulable facts of criminal activity. The police officers do not agree on whether they traveled in a marked or unmarked vehicle, which leads to uncertainty about whether the individuals even knew they were being approached by the police. The fact that one individual stepped behind the

other two is not in and of itself any evidence of criminal activity, nor is putting ones hands in coat pockets in February indicative of criminal activity. Both officers testified that they did not recognize any of the three individuals prior to making the stop, so that cannot support a finding of articulable suspicion. Both officers also argue officer safety concerns. Once again, the testimony is inconsistent. Officer Bruck testified that he had officer safety concerns before he exited the vehicle. However, Officer Crinklaw testified that the defendant did not hide behind the other two individuals until after they had exited the vehicle. When reviewing the totality of the circumstances, the evidence submitted is still insufficient to justify articulable suspicion that criminal activity is afoot. The court agrees with the magistrate in this regard and consequently will grant the motion to suppress.

THEREFORE, IT IS ORDERED:

1. Defendant's motion to suppress, Filing No. 13, is granted;

2. The government's objections, Filing No. 22, are overruled; and

3. The report and recommendation of the magistrate, Filing No. 21, is adopted.

DATED this 10th of November, 2005.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge